NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GARY Y. SUSSMAN, OSB #873568**
Assistant United States Attorney
gary.sussman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902
Telephone:  (503) 727-1000
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | No. 3: 20-cr-00332-SI |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **EDWARD WILLIAM CARUBIS,** | |
| **Defendant.** | Sentencing Date:  January 4, 2023 |

Defendant will be before the Court for sentencing after pleading guilty to a misdemeanor count of assaulting three federal officers.  For the following reasons, the parties jointly recommend that the Court impose a sentence of time served, with no term of supervision to follow.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The summer of 2020 brought tumultuous nightly riots to downtown Portland, many of which were focused on the Mark O. Hatfield U.S. Courthouse.  Federal agents who attempted to defend the courthouse were subjected to verbal abuse, projectiles, and assaults

with high-powered handheld laser pointers. This case is about one such laser assault on three federal officers, one of whom suffered permanent eye damage as a result (PSR ¶¶ 11-15, 18).

On July 11, 2020, during an evening of unrest, defendant was seen shining a powerful green laser pointer at three federal agents who were assigned to provide security at the courthouse (PSR ¶¶ 11-15). Defendant wore a black hat, carried a black umbrella, and wielded a trash can that had been cut in half and fashioned into a shield. The can was spray-painted with four large red letters – "ACAB" ("all cops are bastards"). A photo of the makeshift shield follows:



Agents who witnessed the assaults provided a description of defendant to Portland Police officers who located and detained him near the courthouse (PSR ¶ 16). Defendant was positively identified as the person who shined a laser pointer at the agents' eyes (*id.*). Arresting officers recovered the shield, the umbrella, and a Class III green laser pointer (PSR ¶¶ 16, 17). The laser bore a label warning against direct contact with eyes (PSR ¶ 17).

Two of the three victims reported seeing spots or having blurred vision from the laser strikes (PSR ¶¶ 12, 15). One was diagnosed with visual distortion and longstanding reduced vision from laser exposure (PSR ¶ 18).

On August 11, 2020, defendant was charged by information with one misdemeanor count of assaulting three federal officers (ECF No. 10). He pled guilty to the information on August 31, 2022 (PSR ¶ 1). A presentence report was prepared.

The report calculated a base offense level of 10 under U.S.S.G. § 2A2.4 (PSR ¶ 26). The report added three levels because the offense involved the use of a dangerous weapon, and two more levels because one victim suffered bodily injury in the form of permanent vision loss (PSR ¶¶ 27, 28). After recommending a two-level reduction for acceptance of responsibility, the report calculated a total offense level of 13, a criminal history category of I, and an advisory guideline range of 12 months (PSR ¶¶ 24, 34, 35, 39, 76).[1] The Probation Office recommends a sentence of time served, with no period of supervision to follow (PSR Sent. Recommendation, at 1). The parties concur in that recommendation.

## II.     DISCUSSION

### A.     *The Plea Agreement in This Case.*

The guideline calculations in the plea agreement mirror those in the presentence report (Plea Agreement, ¶ 8). So long as defendant accepts responsibility, the parties will jointly recommend a sentence of time served with no term of probation or supervised release,

---

[1] The guideline range for offense level 13, criminal history category I is 12-18 months. However, since the statutory maximum for the offense of conviction is 12 months, that effectively becomes the guideline range. *See* U.S.S.G. § 5G1.1(c)(1), and Commentary.

**Government's Sentencing Memorandum**                                              **Page 3**

and a $25 fee assessment (*id.*, ¶ 9). Defendant agrees to abandon the laser device seized at the time of his arrest (*id.*, ¶ 10). The agreement, which is governed by Fed. R. Crim. P. 11(c)(1)(B), contains a standard waiver of appeal and post-conviction relief (*id.,* ¶¶ 12, 13).

### B.     The Appropriate Sentence in This Case.

The guidelines are now advisory. *United States v. Booker*, 543 U.S. 220 (2005). Nonetheless, they still serve as the starting point and initial benchmark in all sentencing proceedings. *Peugh v. United States*, 133 S. Ct. 2072, 2080 (2013); *Gall v. United States*, 552 U.S. 38, 49 (2007). They are a statutory factor that sentencing courts must consider when imposing a sentence, *see* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350.

The remaining § 3553(a) sentencing factors include the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. §§ 3553(a)(1)-(2). They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(7). *See also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).

More than 100 straight nights of riots changed the character of downtown Portland, and not for the better. Night after night, those seeking to perpetrate violence and mayhem

co-opted legitimate social justice protest and used it as an excuse to commit wanton acts of vandalism that left many businesses permanently shuttered.  Two years later, the courthouse windows remain boarded up, and the fencing remains in place.

Law enforcement officers seeking only to protect the courthouse and maintain a semblance of order were subjected to repeated verbal and physical assaults.  Some otherwise law-abiding citizens became caught up in the frenzy and committed acts they later came to regret.  Defendant appears to be one of those people.

He comes from a distinctly non-criminal background.  His was a loving and supportive family.  He holds a master's degree from Willamette University.  He is gainfully employed as a financial analyst for a charitable organization.  He has no prior convictions and there is no evidence he has committed another offense since his arrest.  Apart from his actions on July 11, 2020, he has led a law-abiding life.

Those actions, however, were serious.  He arrived downtown ready to engage with the police.  He carried an umbrella, a makeshift shield spray-painted with a distinctly anti-police slogan, and a powerful green laser which he pointed at the eyes of several law enforcement officers.  One suffered what an ophthalmologist diagnosed as visual distortion with "longstanding reduced vision" due to laser exposure (PSR ¶ 18).  While causing such injury may not have been defendant's intent, it was nonetheless the result of his deliberate conduct.

The government does not view defendant as someone who is likely to reoffend.  The government sincerely hopes that defendant has learned his lesson, and that he will refrain from engaging in such conduct in the future.  The government does not see a need for jail time to protect the public from future crimes, or to act as either a general or specific

deterrent. Based on the totality of the circumstances present in this case, the government, defendant, and the Probation Office all urge the Court to impose a sentence of time served (roughly three days), with no term of probation or supervised release to follow.

### III.    CONCLUSION AND SENTENCING RECOMMENDATION

The guideline calculations in the presentence report are correct. Defendant's total offense level is 13, his criminal history category is I, and his advisory guideline range is 12 months. For the reasons discussed above, the parties jointly recommend that the Court impose a sentence of time served, with no period of supervision to follow.

Dated:  December 29, 2022.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

 /s/ Gary Y. Sussman
GARY Y. SUSSMAN, OSB #873568
Assistant United States Attorney